1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT

7              FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Felton Guillory,                     )    No. CV-07-775-ROS (PC)
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    James E. Tilton, et al.,             )
13                                       )
                Defendants.              )
14                                       )
                                         )
15  ——————————————————————————————)

16                              **Background**

17        On May 29, 2007, Plaintiff filed a four-count action under 42 U.S.C. §§ 1983 and

18  1985(3) alleging various employees and officials of the California Department of Corrections

19  and Rehabilitation ("CDCR") violated Plaintiff's rights under Constitutional Amendments

20  I, V, VIII and XIV while Plaintiff was incarcerated at the California Correctional Institution

21  at Tehachapi (CCI – Tehachapi) (Doc. 1). The named Defendants are: three correctional

22  officers (Snyder, Granillo and Montano) and seven supervisory officials (Sergeant

23  Villanueva, Lieutenant Johnson, Lieutenant R.A. Gonzalez, Associate Warden Carrasco,

24  Chief Deputy Warden F. Gonzalez, Facility Captain Pimentel and Warden Sullivan), all at

25  CCI – Tehachapi, as well as two CDCR officials in Sacramento (Director Tilton and Inmate

26
27
28

1   Appeals Branch Chief Grannis).[1]  On February 19, 2008 and August 21, 2008, screening
2   orders were issued dismissing Defendants Villanueva, R.A. Gonzalez, Pimentel and Sullivan
3   (Docs. 8, 19).  On September 24, 2008, the United States Marshal was ordered to execute
4   service upon the remaining Defendants and proper warnings were issued pursuant to Wyatt
5   v. Terhune, 315 F.3d 1108 (9th Cir. 2003) and Rand v. Rowland, 154 F.3d 952 (9th Cir.
6   1998) (Doc. 21).

7          Granillo, Montano and Snyder waived service on September 29, 2008 and filed an
8   Answer on December 19, 2008 (Docs. 26, 30-32).  Lt. Johnson waived service on December
9   19, 2008 and filed an Answer on January 16, 2009 (Docs. 36, 38).  Defendants Tilton, F.
10  Gonzalez and Carrasco waived service on September 29, 2008 and, on December 19, 2008,
11  filed a joint motion to dismiss for failure to state a claim (Docs. 27-29, 33).  Defendant
12  Grannis waived service on January 5, 2009 and, on January 22, 2009, filed a motion to
13  dismiss for failure to state a claim (Docs. 37, 39).  On February 17, 2009, Plaintiff responded
14  to the two pending motions (Doc. 40).  No replies have been filed.  Currently before the
15  Court are the two Motions to Dismiss by Defendants Tilton, F. Gonzalez, Carrasco and
16  Grannis ("Defendants"), which will be granted as set forth below.

17

18                                      **Discussion**

19  **A. Standard**

20         Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits challenge of a
21  complaint for "failure to state a claim upon which relief can be granted."  A court's inquiry
22  "is limited to the allegations in the complaint, which are accepted as true and construed in
23  the light most favorable to the plaintiff."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580,
24  588 (9th Cir. 2008).  This presumption applies only to facts and "is inapplicable to legal
25  conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Moreover, a court "need not

26

27         [1] References to CDCR Defendants' ranks and titles are provided for the time period relevant
28  to the Complaint.

                                          - 2 -

1 accept as true allegations contradicting documents that are referenced in the complaint or that
2 are properly subject to judicial notice." Lazy Y Ranch Ltd., 546 F.3d at 588; see also Lee
3 v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (identifying "two exceptions to the
4 requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary
5 judgment motion" – material subject to judicial notice and material attached to or referenced
6 in the complaint).

7        Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") provides the yardstick for
8 determining the sufficiency of a complaint in a Rule 12(b)(6) analysis. According to Rule
9 8(a)(2), a proper claim for relief need only contain "a short and plain statement of the claim
10 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) has been
11 interpreted to require that a plaintiff's "[f]actual allegations must be enough to raise a right
12 to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965
13 (2007). This means the plaintiff must state a "plausible claim," one from which a court,
14 relying on "judicial experience and common sense," may "draw the reasonable inference that
15 the defendant is liable for the misconduct alleged." Ashcroft, 129 S. Ct. at 1949-50.
16 Accordingly, while neither "heightened fact pleading of specifics" nor "detailed factual
17 allegations" are required, a plaintiff cannot rely on "labels and conclusions, and a formulaic
18 recitation of the elements of a cause of action," Bell Atl. Corp. 127 S. Ct. at 1964-65, 1974,
19 and enough facts must be alleged to "give the defendant fair notice of what the ... claim is
20 and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (per
21 curiam) (internal citation omitted).

22        When plaintiff is pro se and alleges civil rights violations, the court must construe the
23 allegations liberally and grant plaintiff leave to amend "unless it clearly appears that the
24 deficiency cannot be overcome by amendment." Gillespie v. Civiletti, 629 F.2d 637,
25 640 (9th Cir. 1980) (internal citation omitted). See also Jones v. Cmty. Redevelopment
26 Agency of City of Los Angeles, 733 F.2d 646, 649 (9th Cir. 1984) ("The allegations of a pro
27
28

- 3 -

1    se complaint, however inartfully pleaded, should be held to less stringent standards than

2    formal pleadings drafted by lawyers") (internal citation omitted).

3
## B. Motions to Dismiss
4
### 1. Standard: Causes of Action
5
6         The Complaint contains three claims under 42 U.S.C. § 1983 and one under 42 U.S.C.

7    § 1985(3), all alleging violations of Plaintiff's constitutional rights.

8         To state a claim under § 1983, the Complaint must plead "(1) that the conduct

9    complained of was committed by a person acting under color of state law; and (2) that the

10   conduct deprived the plaintiff of a federal constitutional or statutory right." Hydrick v.

11   Hunter, 500 F.3d 978, 987 (9th Cir. 2007) (internal citation omitted), *vacated on other*

12   *grounds by* Hydrick v. Hunter, 129 S. Ct. 2431 (2009) (Mem.).[2]  To state a § 1983 claim

13   against Defendants, the Complaint must plead that Defendants caused the alleged deprivation

14   by committing an affirmative act, participating in another's affirmative act or omitting to

15   perform an act which each Defendant was legally bound to perform. See Id. at 988 ("[T]he

16   requisite causal connection can be established not only by some kind of direct personal

17   participation in the deprivation, but also by setting in motion a series of acts by others which

18   the actor knows or reasonably should know would cause others to inflict the constitutional

19   injury.") (internal citation omitted).[3]

20

21

22        [2] See also 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance,
23   regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes
     to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the
24   deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be
     liable to the party . . .").
25
26        [3]Although prior case law may have been broader regarding causation vis-a-vis the
     supervisory liability doctrine, it was affirmatively rejected by the Supreme Court's recent decision
27   in Ashcroft v. Iqbal. See 129 S. Ct. at 1949 ("In a § 1983 suit or a *Bivens* action-where masters do
     not answer for the torts of their servants-the term 'supervisory liability' is a misnomer . . . each
28   Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

- 4 -

1    To state a claim under § 1985(3), the Complaint must sufficiently allege an underlying

2    substantive cause of action.[4]  See United Bhd. of Carpenters & Joiners of Am., Local 610,

3    AFL-CIO v. Scott, 103 S. Ct. 3352, 3358 (1983) (Section 1985 "provides no substantial

4    rights itself" but rather "[t]he rights, privileges, and immunities that § 1985(3) vindicates

5    must be found elsewhere") (internal citation omitted).

6

**2. Analysis**

7

8    Because Plaintiff does not sufficiently allege causation between Defendants' actions

9    and the alleged deprivations of Plaintiff's constitutional rights, Defendants' Motions will be

10   granted and the claims against Defendants Tilton, F. Gonzalez, Carrasco and Grannis will

11   be dismissed.

12   The Complaint alleges a campaign of harassment and retaliation, conducted by

13   Correctional Officers Granillo, Snyder and Montano and condoned by Lt. Johnson, which

14   targeted Plaintiff during Plaintiff's first days at CCI – Tehachapi.  According to the

15   Complaint, Plaintiff was targeted because of Plaintiff's violent confrontation with

16   correctional officers at CCI – Los Angeles, where Plaintiff had previously been incarcerated,

17   and because of Plaintiff's Muslim faith.  The harassment and retaliation allegations are

18   serious, including intentional failure to provide food, clothing, bedding, hygiene items (such

19   as soap, tooth paste and toilet paper), eating utensils and writing materials.  However, the

20   Complaint, in no uncertain terms, states the core of the alleged constitutional violations

21   occurred between April 14, 2006, when Plaintiff was transferred to CCI – Tehachapi, and

22   April 21, 2006, one day after Plaintiff filed  a CDR Form 602 to initiate formal grievance

23   proceedings against CCI – Tehachapi staff.[5]  Because Defendants are not alleged to have

24

25       [4] Neither the February 19, 2008 nor August 21, 2008 screening order addressed Plaintiff's

26   § 1985(3) claim.  Accordingly, it was not screened pursuant to 28 U.S.C. § 1915A(a).

27       [5] The Complaint alleges Plaintiff arrived at CCI – Tehachapi on April 14, 2006.  According
     to the Complaint, Plaintiff was not provided with food, soap and toilet paper until April 16 (Doc. 1
28   at 18; Aff. at 31); with sufficient clothing and bedding until April 17 (Doc. 1 at 19-20); with writing

1    learned of the violations until after April 21, 2006, the Complaint fails to plead Defendants'
2    actions or omissions contributed to or otherwise caused the illegal conduct, as required by
3    § 1983.

4        According to the Complaint and attached documents, Defendants' sole source of
5    knowledge concerning the alleged constitutional violations was Plaintiff's Form 602
6    grievance proceedings, which were initiated on April 20, 2006. The Form 602, although
7    filed on April 20, 2006, was not assigned to CDCR staff for review until May 2, 2006 (Doc.
8    Ex. A. at 40). Thus, Defendants Carrasco and F. Gonzalez, whose knowledge of the alleged
9    constitutional violations was acquired when conducting the initial review of the Form 602,
10   could not have learned of the violations until after they had ceased (Doc. 1 Ex. A at 40, 44-
11   5). Similarly, Defendant Grannis, whose knowledge of the alleged violations was acquired
12   when reviewing Plaintiff's appeal of Carrasco's and Gonzalez's final decision on the Form
13   602, did not receive Plaintiff's appeal documents until June 21, 2006 and thus did not learn
14   of the violations until well after they had ceased (Doc. 1 Ex. A at 40-43). With respect to
15   Defendant Tilton, neither the Complaint nor the attachments allege any factual basis
16   suggesting that Tilton knew of the violations.[6] Accordingly, given the facts provided in the

17

18   ─────────────
19   materials and oral hygiene items until April 20 (Doc. 1 at 18); and with full meal portions and eating
20   utensils until April 21 (Doc. 1 Aff. at 32). The CDR Form 602 outlining these deprivations was
     signed on April 19 and filed on April 20 (Doc. 1 Aff. at 32; Ex. A at 39).

21       [6] Defendant Tilton is not referenced in Plaintiff's grievance proceeding documentation.
     Moreover, the Complaint always refers to Tilton in conjunction with the other Defendants and with
22   conclusory statements: (1) "This action arises from the conspiracy by the State of California
     Department of Corrections, and its current director, James Tilton . . . N. Grannis, Chief of Inmate
23   Appeals . . . F. Gonzalez, Chief Deputy Warden, M. Carrasco, Associate Warden . . . to cover up and
24   conceal the invidious discrimination, torture and abuse and retaliation of and against Plaintiff . . .by
     refusing to properly and adequately investigate the charges that Plaintiff alleged . . . and by fostering
25   and promoting practices and policies that allow . . . prison officials to invidiously discriminate,
     retaliate and torture Plaintiff . . .;" (2) "Plaintiff alleges that Defendants Tilton, Grannis, F. Gonzalez,
26   [and] M. Carrasco . . . [were] told by Plaintiff that he has religious fasts during the week when he
27   eats only after sunset; yet all these Defendants still supported and defended Granillo's taking of
     Plaintiff's food . . ."; (3) "Plaintiff . . . alleges, that the Defendants Tilton . . . Grannis . . . Carrasco,
28   [and] F. Gonzalez['s] . . . actions and omissions and policies violated Plaintiff's First, Fifth, Eighth

1  Complaint and attached documents, none of the Defendants knew of the alleged
2  constitutional violations until after they had been corrected and thus could not have caused
3  the offending conduct per § 1983.

4
5      The Complaint also alleges one constitutional violation that occurred after April 21,
6  2006: Correctional Officer Granillo's practice of removing Plaintiff's uneaten meals from
7  his cell during the day  (Doc. 1 at 21-22).  According to Plaintiff, this conduct was
8  unconstitutional because Granillo, knowing that Plaintiff observed a religious fast during the
9  day, served and removed Plaintiff's meals before sundown with the intent of depriving
10 Plaintiff of food.  Granillo's conduct is alleged to have stopped on September 7, 2006 (Doc.
11 1 at 21-22; Aff. at 33).  For the same reasons as discussed above, Plaintiff fails to plead
   causation on this claim.
12

13     According to the Complaint and attached documents, Defendants Carrasco and
14 Gonzalez did not receive notice of Granillo's alleged misconduct until September 1, 2006,
15 upon Plaintiff's filing of a second Form 602 (Doc. 1 at 21-22; Ex. A at 47-48).  While it is
16 possible that Carrasco's and Gonzalez's actions or omissions caused or otherwise contributed
17 to Granillo's alleged misconduct conduct between September 1 and September 7, the
18 Complaint contains no additional facts suggesting that such claims are plausible.  See
19 Ashcroft, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent
20 with' a defendant's liability, it 'stops short of the line between possibility and plausibility of
21 'entitlement to relief.' ") (citing Bell Atl. Corp., 127 S. Ct. at 1966).  Defendant Grannis did
22 not receive notice of the alleged misconduct until October 16, 2006, upon reviewing
23 Plaintiff's appeal of Carrasco's and Gonzalez's decision concerning the second Form 602,
24 and thus did not learn of Granillo's actions until well after they had ceased (Doc. 1 Ex. A at
25 46, 48-49).  With respect to Defendant Tilton, neither the Complaint nor the attachments

26

27 and Fourteenth Amendment[] rights of the U.S. Constitution;" (4) "Plaintiff . . . alleges, that
   Defendants Tilton, Grannis . . . F. Gonzalez, [and] Carrasco . . . demonstrated reckless and callous
28 indifference to the violation of Plaintiff's constitutionally-protected rights." (Doc. 1 at 12, 22-23).

- 7 -

provide any factual basis suggesting Tilton knew of Granillo's alleged misconduct. <u>See</u> <u>supra</u> Note 6.

Failing to adequately plead causation, the Complaint does not state a claim against Defendants under § 1983. Because the § 1983 claims fail, so too must the § 1985(3) claims. <u>See</u> <u>United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO</u>, 103 S. Ct. at 3358.

Accordingly,

**IT IS ORDERED** Defendants' Motions to Dismiss (Docs. 27, 37) **ARE GRANTED**.

**FURTHER ORDERED** Plaintiff may file a motion for leave to amend the Complaint, including a proposed amended complaint, **WITHIN TWENTY DAYS OF THIS ORDER**. If Plaintiff fails to timely file such motion the Clerk of Court shall dismiss Defendants Tilton, Grannis, Carrasco and F. Gonzalez.

DATED this 6th day of August, 2009.

Roslyn O. Silver
United States District Judge

- 8 -