1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Felton Guillory,                         )    No. CV-07-0775-ROS (PC)
                                             )
10              Plaintiff,                    )
                                             )    **ORDER**
11  vs.                                       )
                                             )
12                                            )
    James E. Tilton, et al.,                 )
13                                            )
                Defendants.                   )
14                                            )
                                             )
15

16         Pending before the Court is Defendants' Motion for Partial Summary Judgment (Doc.

17  63).[1]  For the reasons below, the motion will be granted.  The case will proceed to trial on

18  Plaintiff's remaining claims.

19                              **BACKGROUND**

20       **The Parties**

21         Plaintiff Felton Guillory is a prisoner in custody with the California Department of

22  Corrections and Rehabilitation ("CDCR"). (Doc. 64, ¶ 1). Defendant Johnson is retired, but

23  Johnson was a lieutenant at California Correctional Institution ("CCI") in Tehachapi,

24  California at all times relevant to this lawsuit. (Id., ¶ 3-4).  Johnson did not work on April

25  14 or 15, 2006. (Id., ¶ 5). Defendant Granillo is a correctional officer at CCI, and worked

26

27

28         [1] The remaining defendants are Granillo, Johnson, Montano and Snyder
    (collectively, "Defendants").

1    from 6 a.m. to 2 p.m. on all days relevant to this lawsuit.  (Id., ¶ 6-8).  Defendant Montano

2    is a sergeant at CCI, but at all relevant times he was a correctional officer at CCI.  (Id., ¶ 9).

3    Montano stopped working at 10 p.m. on April 14, 2006, and did not work on April 15

4    through 17, 2006.  (Id., ¶ 10-11).  Defendant Snyder was a correctional officer at CCI and

5    worked from 2 p.m. to 10 p.m. on all days relevant to this lawsuit.  (Id., ¶ 12-13).

6           **Plaintiff's Transfer**

7           On April 14, 2006, Plaintiff was charged with participating in a battery on a peace

8    officer at California State Prison Los Angeles ("LAC").  (Id., ¶ 14).  Plaintiff was deemed

9    a threat to the safety of "self and others," and given an Administrative Segregation Unit

10   Placement Notice.  (Id., ¶ 15).  Lieutenant R. Clemons ordered Plaintiff be transferred from

11   LAC to CCI and placed in Administrative Segregation, and remain there until an institutional

12   classification committee evaluated his program and housing needs.  (Id., ¶ 16).  Defendants

13   played no role in the decision to place or retain Plaintiff in Administrative Segregation.  (Id.,

14   ¶ 18).  Defendants did not believe, and did not have reason to believe, Plaintiff's assignment

15   was inappropriate.

16          At approximately 8:30 p.m. on April 14, 2006, Defendant Snyder escorted Plaintiff

17   from Receiving and Release to Building Six where the Administrative Segregation Unit is

18   located.  (Id., ¶ 22).  The temperature was 47 or 48 degrees Fahrenheit.  (Id., ¶ 23).  Plaintiff

19   does not recall how long the escort took, but it covered approximately 120 yards and would

20   routinely take about six minutes.  (Id., ¶ 25-30).  An inmate in Administrative Segregation

21   does not typically have a jumpsuit.  (Id., ¶ 31).  If necessary, additional clothing such as a

22   jumpsuit may be provided to a prisoner during escort, but correctional staff members prefer

23   not to provide additional clothing for security reasons.  (Id., ¶ 33).  Inmates often refuse to

24   comply with orders, and Defendant Snyder was concerned that an inmate may refuse to

25   relinquish a jumpsuit after transfer.  (Id., ¶ 34-35). This would necessitate a cell extraction

26   or other calculated force.  (Id., ¶ 35).  The risk of injury associated with such force is greater

27   than exposing an inmate to external temperatures for a few minutes during transfer.  (Id.).

28   As such, most inmates are transported to Administrative Segregation without a jumpsuit or

1 additional clothing.  (Id.).  Defendant Snyder did not believe additional clothing was

2 necessary during the April 14, 2006 escort. (Id., ¶ 36).  Plaintiff does not know who escorted

3 him to the Administrative Segregation Unit on April 14, 2006.  (Id., ¶ 21).

4 **Sandbags**

5 Sandbags are sometimes placed in front of cell doors to prevent inmates from passing

6 things to one another, such as weapons, contraband or notes.  (Id., ¶ 37).

7 **Meals**

8 Inmates in Administrative Segregation are provided three meals per day.  (Id., ¶ 39).

9 The meals and trash are collected approximately one hour after they are delivered, except for

10 the sack lunch and lunch trash which is collected at dinner.  (Id.).  Plaintiff does not know

11 the identity of anyone who delivered meals to his housing unit from April 15 through 21,

12 2006.  (Id., ¶ 40).

13 On April 15, 2006 breakfast and lunch were delivered by a non-defendant correctional

14 staff member who failed to stop at Plaintiff's cell.  (Id., ¶ 41).  Plaintiff believed his cellmate

15 inadvertently caused his cell to be skipped, so Plaintiff did not complain about missing meals

16 until 5 p.m. at the earliest.  (Id., ¶ 42).  Plaintiff did not receive dinner on April 15, 2006, or

17 breakfast or lunch on April 16, 2006.  (Id., ¶ 43).  His first meal was at 6 p.m. on April 16,

18 2006.  (Id., ¶ 44).  Defendants Granillo, Johnson, Montano and Snyder are not aware of

19 anyone who refused to provide Plaintiff with any meals, and did not know Plaintiff was

20 refused meals.  (Id., ¶ 45-46).  Plaintiff did not suffer any serious medical effect from the

21 missed meals.  (Id., ¶ 47-48).

22 Between April 17 and 21, 2006 the size of Plaintiff's breakfast and dinner were

23 smaller than he was accustomed to.  (Id., ¶ 51).  CDCR dieticians are responsible for

24 ensuring every prison prepares and serves meals that meet daily nutritional standards.  (Id.,

25 ¶ 57).  CDCR's meal plans include instructions regarding serving size. (Id., ¶ 58).  CDCR's

26 meal plan provided inmates with an average of 2943 calories per day.  (Id., ¶ 61). Meals are

27 served from large containers with serving utensils that are uniform in size.  (Id., ¶ 59).

28 Inmates serve most of the meals in prison, and they regularly exceed CDCR's serving sizes.

- 3 -

1   (Id., ¶ 64).  A "normal [meal] tray" contained "more than a man could eat."  (Id., ¶ 65)

2   Defendants Granillo, Montano and Snyder did not believe or have reason to believe CDCR's

3   meal plans were too small.  (Id., ¶ 66).  New Administrative Segregation inmates often

4   complained CDCR's serving sizes were too small.  (Id., ¶ 66).

5       **Uneaten Food**

6       Correctional staff are authorized to conduct random cell searches.  (Id., ¶ 67); Cal.

7   Code Regs. tit. 15, § 3287 (2006).  Due to increased security risk in the unit, correctional

8   staff frequently search cells in Administrative Segregation. (Doc. 64, ¶ 68).  Inmates are not

9   allowed to keep uneaten food in their cell.  (Id., ¶ 69).  Uneaten food poses a threat to the

10  sanitation of a cell and the entire housing unit, and can lead to odor, disease and pest

11  infestations. (Id., ¶ 70).  During cell searches, correctional staff regularly confiscate uneaten

12  food.  (Id., ¶ 71).

13      However, inmates may request a special religious diet that can exempt an inmate from

14  normal collection times for uneaten food. (Id., ¶ 72-73).  Each year, the prison approves fasts

15  during the religious holiday of Ramadan. (Id., ¶ 72).  Under Department Operation Manual

16  ("DOM") section 54080.13 inmates may request a special religious diet at least 30 days in

17  advance.  (Id., ¶ 73). The request must be made in writing to the chaplain, who decides

18  whether to sponsor the request and pass it to supervisory prison officials to determine

19  whether the request is feasible and appropriate.  (Id.).  If approved, inmates are provided

20  paperwork indicating their eligibility and correctional staff are provided a list and

21  instructions for the special program.  (Id., ¶ 73-74).

22      Plaintiff fasted during the Ramadan, and Plaintiff was on an approved list of

23  participants for fasting.  (Id., ¶ 75).  However, Plaintiff did not apply for permission to keep

24  uneaten food in his cell during a fast, and he did not have paperwork exempting him from

25  normal collection of uneaten food.  (Id., ¶ 77).  Defendants Johnson and Granillo played no

26  role in processing requests for special religious diet programs.  (Id., ¶ 78).  Defendant

27  Granillo did not have any reason to believe Plaintiff was exempt from uneaten food

28  collection, and confiscated Plaintiff's uneaten food pursuant to regular policy. (Id., ¶ 79-81).

1   Defendant Johnson did not have any reason to believe Granillo's conduct was improper

2   because Plaintiff was not exempt from the uneaten food collection policy. (Id., ¶ 83).

3       **Toilet Paper and Soap**

4       The amounts and type of property permitted in the Administrative Segregation Unit

5   are restricted. (Id., ¶ 84-85). Defendants Granillo, Montano and Snyder always issued

6   inmates toilet paper and soap upon their arrival, and have never observed a correctional staff

7   member fail to provide an inmate with toilet paper or soap upon arrival. (Id., ¶ 87).

8   Defendants Granillo, Johnson, Montano and Snyder did not believe, or have reason to

9   believe, Plaintiff did not have toilet paper or soap. (Id., ¶ 88-91). Administrative

10  Segregation inmates are allowed less property than general population inmates, so

11  Defendants Granillo, Montano and Snyder frequently hear generalized complaints such as,

12  "We don't have anything in here." (Id., ¶ 92). When they investigate those complaints, they

13  discover the inmates have been issued necessary property, but are dissatisfied with what they

14  are allowed to possess in Administrative Segregation. (Id., ¶ 92). As such, upon hearing a

15  general complaint such as "I don't have anything in here," Defendants Granillo, Montano and

16  Snyder would not have reason to believe an inmate lacks toilet paper and soap unless

17  something was specifically said about toilet paper or soap. (Id., ¶ 93). Plaintiff stated to

18  Defendants Snyder and Granillo, "We ain't got nothing. Why you guys not giving us

19  anything?" (Id., ¶ 96). Before April 16, 2006, Plaintiff did not tell Defendants Snyder,

20  Granillo, Montano or Johnson that he did not have toilet paper. (Id., ¶ 95). On April 16,

21  2006, Plaintiff received toilet paper and soap. (Id., ¶ 94). Between April 14 and 16, 2006,

22  Plaintiff had one bowel movement and had to wash his hands with water. (Id., ¶ 97-98).

23      **Mattress**

24      Administrative Segregation inmates occasionally destroy their mattresses. (Id., ¶ 99).

25  Extra mattresses are typically stored in the prison laundry. (Id.). The laundry is run by non-

26  correctional staff employees who have keys to the building. (Id., ¶ 100). On Friday April

27  14, 2006, Defendant Montano learned the Administrative Segregation Unit was running low

28  on mattresses. (Id., ¶ 101-102). Defendant Montano contacted laundry, but they were

1  closed.  (Id., ¶ 103).  Montano searched other cells looking for unused mattresses.  (Id.).

2  Montano was then informed the Administrative Segregation Unit was going to receive

3  additional inmates.  (Id., ¶ 104).  Montano advised his supervisor, Sergeant Villanueva, of

4  the mattress shortage, and Villanueva told Montano to also search all of Building Six and that

5  he would try to get laundry reopened before Monday April 17, 2006.  (Id., ¶ 105).  Montano

6  searched Building Six with another officer, but did not locate any available mattresses.  (Id.,

7  ¶ 106).  Villanueva informed Montano there was no laundry access, and Montano was not

8  aware of any other means of obtaining additional mattresses.  (Id., ¶ 107-109).  On April 14

9  through 16, 2006, Plaintiff shared one mattress with his cellmate.  (Id., ¶ 110).  On Monday

10  April 17, 2006, a second mattress and sheets were placed in Plaintiff's cell.  (Id., ¶ 111).

11  **Communications**

12  Plaintiff alleges when he discussed the amount of property in his cell with Granillo,

13  Granillo responded, "You know what you Muslims are here for.  Stop bitching."  (Id., ¶ 112).

14  The conversation lasted only a few seconds.  (Id.).  Defendants Snyder and Montano did not

15  hear Granillo make this statement.  (Id., ¶ 113).  When Plaintiff discussed the amount of

16  property in his cell with Snyder, Snyder calmly responded, "The sergeant said nothing comes

17  in or out of the cell."  (Id., ¶ 114).  This conversation also lasted only a few seconds.  (Id.).

18  Between April 14 and 19, 2006, Defendant Johnson did not communicate with Plaintiff, and

19  Johnson was not aware of anyone mistreating Plaintiff, escorting Plaintiff, failing to provide

20  Plaintiff with a meal, mattress, bedding, clothing, toilet paper, or soap.  (Id., ¶ 117-118).  On

21  April 20, 2006, Plaintiff complained to Johnson that property was missing from his cell. (Id.,

22  ¶ 119).  Immediately after speaking with Johnson, Plaintiff received a toothbrush, toothpaste,

23  eating utensils and writing materials.  (Id., ¶ 120).

24  **ANALYSIS**

25  **A.    Summary Judgment Standard**

26  Summary judgment is appropriate where "there is no genuine issue as to any material

27  fact" and "the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c).  The

28  evidence of the non-moving party is to be believed, and all reasonable inferences drawn in

- 6 -

1    its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). "[A] party seeking

2    summary judgment always bears the initial responsibility of informing the district court of

3    the basis for its motion, and identifying those portions of the pleadings, depositions, answers

4    to interrogatories, and admissions on file, together with the affidavits, if any, which it

5    believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

6    *Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). However, if the non-moving

7    party bears the burden of proof at trial, the moving party's summary judgment motion need

8    only highlight the absence of evidence supporting the non-moving party's claims. *See*

9    *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at

10    323-25). The burden then shifts to the non-moving party who must produce evidence

11    sustaining a genuine issue of disputed material fact. *Id.*

12    **B.**     **Defendants' Motion for Summary Judgment**

13        Defendants Granillo, Johnson, Montano and Snyder move for summary judgment on

14    Plaintiff's claims except (1) Plaintiff's Eighth Amendment claim against Snyder regarding

15    the amount of clothing and sheets Plaintiff possessed between April 15 and April 16, 2006;

16    and (2) Plaintiff's First and Eighth Amendment claims against Granillo regarding the amount

17    of clothing and sheets Plaintiff possessed between April 14 and April 16, 2006. The Court

18    will address each claim on which Defendants move for summary judgment.

19        **1.**     **Eighth Amendment Claims**

20        The Eighth Amendment prohibits cruel and unusual punishment. This imposes a duty

21    on prison officials to provide basic life necessities such as food, clothing, shelter and

22    sanitation. *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Farmer v. Brennan*, 511 U.S. 825,

23    832 (1994). The Constitution does not mandate comfortable prisons. *Farmer*, 511 U.S. at

24    832. To establish an Eighth Amendment violation against a prison official, a plaintiff must

25    show: (1) the deprivation was objectively, sufficiently serious; and (2) the prison official had

26    a sufficiently culpable state of mind, as where the offending conduct is unnecessary and

27    wanton. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

28

1    To satisfy the first prong, a plaintiff must show he faced a substantial risk of serious

2 harm. *Farmer*, 511 U.S. at 835-36. A court must consider the circumstances, nature and

3 duration of the deprivation to determine whether a deprivation is sufficiently serious. *Id*.

4 The more basic the need, the shorter time it may be withheld. *Johnson v. Lewis*, 217 F.3d

5 726, 731 (9th Cir. 2000). Temporary deprivations of sanitation are insufficient to state an

6 Eighth Amendment claim. *Compare Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A

7 filthy, overcrowded cell and a diet of 'grue[l]' might be tolerable for a few days and

8 intolerably cruel for weeks or months.") and *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir.

9 1996) (four-day exposure to raw sewage from overflowing toilet in cell not cognizable

10 because it was a "de minimis imposition and thus [did] not implicate constitutional

11 concerns") *with Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (Eighth

12 Amendment violation cognizable where serious health hazards lasted nine months, including

13 inoperable toilets, insect infestations in stagnant pools of water and a lack of cold water when

14 temperatures were above 100 degrees).

15    To satisfy the second prong, a plaintiff must demonstrate the defendants intentionally

16 acted with deliberate indifference to the substantial risk of harm. *Wilson v. Seiter*, 501 U.S.

17 294, 302-03 (1991). Negligence or gross negligence does not constitute deliberate

18 indifference. *Farmer* 511 U.S. at 835-36; *Estelle v. Gamble*, 829 U.S. 97, 106 (1976). To

19 be liable for an Eighth Amendment violation, the prison official must know of and disregard

20 an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The official must be

21 aware of facts from which the inference could be drawn that a substantial risk of serious

22 harm exists, and he must also draw that inference. *Id.*

23    **a. Plaintiff's Eighth Amendment Claims Regarding Meals**

24    Plaintiff alleges Defendants violated his Eighth Amendment rights by depriving him

25 of five meals on April 15 and April 16, 2006. Plaintiff's claim fails for two reasons. First,

26 Plaintiff has not created a genuine issue of material fact that Defendants Montano, Johnson,

27 Granillo or Snyder deprived him of food. Montano did not work either day. Johnson did not

28 work April 15 and Plaintiff did not inform Johnson of the problem on April 16. Granillo and

- 8 -

1  Snyder were working, but were not responsible for delivering Plaintiff's meals, and they did

2  not believe and were not informed anyone refused to provide Plaintiff with meals.  Second,

3  prisons must provide inmates with food, but to show deliberate indifference to Plaintiff's

4  dietary needs, Plaintiff must show his health was in immediate danger or his health suffered

5  as a result of the lack of food.  *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Berry*

6  *v. Brady*, 192 F.3d 504, 506-08 (5th Cir. 1999) (deprivation of food is cruel and unusual

7  punishment only if it denies minimal civilized measure of life's necessities, which depends

8  on duration of deprivation).  Plaintiff has not shown that missing five meals placed his health

9  in immediate danger or that his health suffered from the lack of food.

10  Plaintiff also alleges he received small serving sizes for breakfast and dinner between

11  April 16 and April 21, 2006.  Again, Plaintiff's claims fail for two reasons.  First, Plaintiff

12  has presented no evidence these Defendants delivered Plaintiff's meals between April 16 and

13  April 21, 2006.  Dieticians, not Defendants, prepared the menus.  Second, prison meals

14  provided 2943 calories per day.  Inmates in general population were accustomed to receiving

15  excess servings.  Administrative Segregation inmates often complained the meals were too

16  small, and subsequent investigations revealed the servicing sizes were sufficient for

17  nutritional needs.  Plaintiff concedes he was accustomed to servings that were "more than

18  a man could eat," and he could not determine the number of calories he was provided

19  between April 16 and April 21, 2006. Plaintiff has not demonstrated his health was impacted

20  or in immediate danger.

21  Plaintiff has not demonstrated a genuine issue of material fact as to his Eighth

22  Amendment claim regarding his meals.

23  **b.  Plaintiff's Eighth Amendment Claim Regarding the Mattress**

24  Plaintiff alleges he shared a mattress with his cellmate between April 14 and April 16,

25  2006. Plaintiff has not shown he faced a substantial risk of serious harm.  *Farmer*, 511 U.S.

26  at 835-36.  The deprivation was brief.  The failure to provide a mattress for three nights does

27  not violate the Eighth Amendment.  *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir.

28  1988) (sleeping on the floor without a mattress for a night does not state an Eight

1    Amendment violation) *vacated on other grounds by* 493 U.S. 801 (1989); *Wilson v. Schomig*,

2    863 F.Supp. 789, 794-95 (N.D. Ill. 1994) (without a showing of physical harm, no Eighth

3    Amendment claim for inmate forced to sleep on filthy mattress); *Peterkin v. Jeffes*, 855 F.2d

4    1021, 1026-28 (3d Cir. 1988) sleeping on dirty mattress on floor did not state Eighth

5    Amendment claim).  Nor has Plaintiff shown Defendants intentionally acted with deliberate

6    indifference to the substantial risk of harm.  As discussed above, Johnson played no role in

7    the mattress allegations.  As to the remaining Defendants, they searched for a mattress but

8    could not locate one until laundry opened the next business day.  Plaintiff has not

9    demonstrated a genuine issue of material fact as to his Eighth Amendment claim regarding

10   the mattress.

11                    **c.  Plaintiff's Eighth Amendment Claim Regarding Property in His Cell**

12                    Plaintiff alleges his Eighth Amendment rights were violated when he was denied toilet

13   paper and soap for two days, and a toothbrush for a week.  Defendants were not responsible

14   for issuing these hygiene items upon Plaintiff's arrival.  Non-defendant officers were

15   responsible for issuing such items upon Plaintiff's arrival. Defendants were not aware of

16   another instance in which an inmate was not issued hygiene items.  Defendants assumed

17   Plaintiff was issued hygiene items.  Plaintiff did not inform Defendants that he was without

18   these hygiene items.  Instead, Plaintiff made general statements, such as "We ain't got

19   nothing."  Given that Administrative Segregation inmates are permitted less property than

20   general population inmates, this is a common generalized complaint, and did not alert

21   Defendants to the missing hygiene items.

22                    To be liable for an Eighth Amendment violation, the prison official must know of and

23   disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837.  The official

24   must be aware of facts from which the inference could be drawn that a substantial risk of

25   serious harm exists, and he must also draw that inference. *Id.* Defendants were without facts

26   to draw the inference, and did not draw the inference, that Plaintiff faced a substantial risk

27   of serious harm.

28

1   Moreover, courts have found the temporary deprivation of hygiene items does not

2   satisfy the first component of an Eighth Amendment claim that the deprivation was

3   objectively, sufficiently serious. *Harris v. Flemming,* 839 F.2d 1232, 1235-36 (7th Cir.

4   1988) (no constitutional violation where prison officials failed to provide inmate with toilet

5   paper for five days, and soap, toothbrush and toothpaste for ten days).

6   Plaintiff has not demonstrated a genuine issue of material fact as to his Eighth

7   Amendment claim regarding the lack of hygiene items in his cell.

8   **d.  Plaintiff's Eighth Amendment Claim Regarding Sandbag**

9   Plaintiff alleges his Eighth Amendment rights were violated when a sandbag was

10   placed in front of his cell door to prevent other inmates from passing him food or hygiene

11   items. Plaintiff's claim fails for two reasons. First, Plaintiff's claims for deprivation of food

12   and hygiene items do not survive summary judgment.  Therefore, preventing other inmates

13   from providing Plaintiff food or hygiene items cannot constitute an Eighth Amendment

14   violation.  Second, sandbags are regularly used to prevent inmates from passing weapons,

15   contraband and notes.  Plaintiff's allegation that Granillo used the sandbag to restrict food

16   or hygiene items is unsubstantiated and conclusory.  Plaintiff was in Administrative

17   Segregation because of his participation in a battery.  An investigation was ongoing, and the

18   sandbag was used for the legitimate penological objective of preserving the integrity of the

19   investigation.  Plaintiff has not demonstrated a genuine issue of material fact as to his Eighth

20   Amendment claim regarding the sandbag.

21   **e.  Plaintiff's Eighth Amendment Claim Regarding the Transfer**

22   Plaintiff alleges his Eighth Amendment rights were violated when he was denied

23   additional clothing during his transfer to the Administrative Segregation Unit.  The record

24   shows inmates in Administrative Segregation do not possess jumpsuits; inmates frequently

25   refuse to comply with orders; if inmates are provided jumpsuits they may refuse to relinquish

26   the jumpsuit, in which case officers must perform a cell extraction; and calculated force

27   would expose the inmate and correctional staff to greater risk of harm than six to ten minutes

28   of exposure to forty-seven degree weather.  (Doc. 64, ¶ 21-35).  Plaintiff has not presented

1   evidence that the alleged deprivation was objectively, sufficiently serious, or the prison

2   official had a sufficiently culpable state of mind.  As such, Plaintiff has not demonstrated a

3   genuine issue of material fact as to his Eighth Amendment claim regarding the escort

4   transfer.

5        **2.      First Amendment Claims**

6           **a.  Retaliation**

7        For each of Plaintiff's Eighth Amendment claims, it appears Plaintiff alleges a

8   corresponding retaliation claim under the First Amendment.   To prevail on a First

9   Amendment retaliation claim, Plaintiff must show: (1) prison officials took adverse action

10  against him; (2) the adverse action was taken because he engaged in protected conduct; (3)

11  the adverse action chilled his First Amendment rights; and (4) the adverse action did not

12  serve a legitimate penological purpose. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.

13  2005).

14       With one exception, discussed below, Plaintiff's First Amendment retaliation claims

15  fail because he failed to: (1) connect these Defendants to the alleged adverse action, and (2)

16  present any evidence Defendants took any action based on Plaintiff's religion.  *See May v.*

17  *Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980) (defendant's conduct must cause the deprivation

18  of a plaintiff's constitutional rights); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

19  (causation is "individualized and focus[es] on the duties and responsibilities of each

20  individual defendant whose acts or omissions are alleged to have caused a constitutional

21  deprivation."). Further, as discussed above, with the exception of the deprivation of hygiene

22  items,[2] the alleged adverse actions served legitimate penological purposes.

23       The lone exception is Plaintiff's retaliation claim against Granillo for deprivation of

24  clothing and bedding.  Plaintiff supports this claim with Granillo's statement, "You know

25  what you Muslims are here for.  Stop bitching."  (Id., ¶ 112).  As such, Granillo indicated

26

27       [2]  As discussed above, Plaintiff has not connected these Defendants to the deprivation
     of hygiene items.  Plaintiff received hygiene items upon telling these Defendants what he was
28  missing.

1     some of his conduct was based upon Plaintiff's religion, and Plaintiff's retaliation claim

2     against Granillo for deprivation of clothing and bedding will go to trial.[3]  (Id.).

3           Plaintiff also argues Snyder's conduct was similar to Granillo's conduct.  However,

4     Plaintiff has not presented any evidence Snyder took any action based on Plaintiff's religion.

5     In contrast to Granillo, Snyder stated, "The sergeant says nothing comes in or out of this

6     cell."  (Doc. 64, ¶ 114).  There is no evidence Snyder's motivations related to Plaintiff's

7     religion.  (Doc. 64, ¶ 114).

8                                        **b.  Free Exercise**

9           Plaintiff alleges his right to exercise his religion was violated when Granillo collected

10    Plaintiff's uneaten food and Johnson failed to intervene upon learning of Granillo's conduct

11    through the prison grievance process. Prison policy, specifically Department Operation

12    Manual section 54080.13, requires inmates to seek prior approval for a special religious diet

13    program.  Plaintiff did not have permission to possess uneaten food.  Defendant Granillo

14    confiscated Plaintiff's uneaten food pursuant to policy.

15          The First Amendment guarantees the right to the free exercise of religion.  "The free

16    exercise right, however, is necessarily limited by the fact of incarceration, and may be

17    curtailed in order to achieve legitimate correctional goals or to maintain prison security."

18    *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  To establish a violation of the free exercise

19    clause, a prisoner must show the defendants prevented him from engaging in conduct

20    mandated by his faith without justification reasonably related to a legitimate penological

21    interest. *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (citing *Turner v. Safley*, 482

22    U.S. 78, 89 (1987)).  The burden is on the prison officials to prove the restriction of the

23    prisoner's religious exercise was reasonably related to a legitimate penological purpose.

24    *Ashelman v. Wawzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997).

25          Under *Turner*, courts evaluate four factors. *Turner*, 482 U.S. at 89.  The first factor

26    is whether there is a logical connection between the act and a legitimate government interest.

27

28          [3]  Defendant Granillo did not move for summary judgment on this retaliation claim.

- 13 -

1    The first factor favors Defendants because removing uneaten food serves the legitimate

2    government interest of guarding against pests, disease, odors, contraband and notes.  The

3    second factor is whether Plaintiff had alternative means to practice his religion. Here, not

4    only could Plaintiff pray and fast, he could also apply to keep his uneaten food in his cell for

5    an extended period of time during a religious holiday.  The second factor favors Defendants.

6    The third factor is the impact the accommodation sought by Plaintiff will have on prison

7    officials, prison resources and other inmates.  Plaintiff did not apply to keep his uneaten food

8    for an extended time.  Instead, Plaintiff argues prisoners should not be required to obtain

9    prior approval to keep their uneaten food longer.  However, Plaintiff's proposal would

10   require correctional staff to make on-the-spot determinations on a daily basis.  The formal

11   application process allows for a more measured, consistent application of prison policy.  The

12   third factor favors Defendants.  The fourth factor is whether there are ready alternatives to

13   the prison's current policy that would provide the sought after accommodation at de minimis

14   cost.  Again, the prison has a procedure in place.  Plaintiff chose not to avail himself of this

15   process.  The fourth factor favors Defendants, as well.  Collecting Plaintiff's uneaten food

16   did not violate Plaintiff's First Amendment rights.

17            **3.      No Right to Hearing**

18            Plaintiff alleges his Due Process rights were violated when prison officials housed him

19   in the Administrative Segregation Unit upon finding Plaintiff posed a threat to "self and

20   others."   First, Defendants played no role in the decision to place or retain Plaintiff in

21   Administrative Segregation.  (Doc. 64, ¶ 14-19).  As such, Plaintiff's claim fails because he

22   has not connected specific defendants to the alleged deprivation of rights.  *Ivey v. Bd. of*

23   *Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982) (vague and conclusory

24   allegations that official personnel were involved in a civil rights violation are insufficient to

25   support a claim under section 1983); *see also May*, 633 F.2d at 167 (defendant's conduct must

26   cause the deprivation of a plaintiff's constitutional rights); *Leer*, 844 F.2d at 633 (causation

27   is "individualized and focus[es] on the duties and responsibilities of each individual

28   defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

1    Second, prison officials have broad administrative authority over the prison's they manage.

2    *Hewitt v. Helms*, 459 U.S. 460, 467 (1983).   Administrative confinement is the type of

3    administrative action that is frequently necessary to the operation of prisons.   *Id.* at 468.

4    Plaintiff has not set forth evidence that any of these Defendants abused their authority to use

5    administrative segregation to manage the prison.

6         **4.      Plaintiff's Conspiracy Claim**

7              Plaintiff makes vague and conclusory allegations that Defendants committed a

8    conspiracy. Plaintiff has not presented any specific facts to support his claim that Defendants

9    entered into a conspiracy.   Allegations of conspiracy must be pled with specificity and

10   support a meeting of the minds. *Manis v. Sterling*, 862 F.2d 679, 681 (9th Cir. 1988); *Karim-*

11   *Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988); *Fonda v. Gray*, 707

12   F.2d 435, 438 (9th Cir. 1983).   Plaintiff has failed to allege "an agreement or meeting of the

13   minds," and such vague and conclusory allegations will "not support a claim for violation

14   of his constitutional rights under § 1983." *Woodrum v. Woodward County, Okla.*, 866 F.2d

15   1121, 1126 (9th Cir. 1989); *see also Ivey,* 673 F.2d at 268.

16        **5.      Plaintiff's Emotional or Mental Distress Damages**

17             Plaintiff seeks emotional or mental distress damages.   "No Federal civil action may

18   be brought by a prisoner confined in a jail, prison or other correctional facility for mental or

19   emotional injury suffered while in custody without a prior showing of physical injury."  42

20   U.S.C. § 1997e(e).  The physical injury requirement does not bar a suit for a constitutional

21   violation, but does bar a claim for mental and emotional injuries. *Oliver v. Keller*, 289 F.3d

22   623, 690 (9th Cir. 2002).  Plaintiff has not alleged physical injury.  Therefore, his claims for

23   emotional or mental distress damages fail.

24   **C.    Plaintiff's "Motion in Opposition"**

25            Although titled a motion, "Plaintiff's Notice of Motion and Motion in Opposition to

26   Defendants' Summary Judgment" (Doc. 71) is actually just a response in opposition to

27   Plaintiff's motion for summary judgment.  As such, Plaintiff's "motion" at Docket 71 will

28   be denied.

1 **D.      Plaintiff's Motion To Submit Weather Report**

2           Plaintiff's "Notice of Motion an[d] Motion for Plaintiff to Submit the Weather

3 Report" (Doc. 73) asks the Court to consider a printout from a Website called Weather

4 Underground for April 14, 2006, which shows the high and low temperatures for Tehachapi,

5 CA.  Plaintiff did not lay any foundation for the Weather Underground report.  Further,

6 Plaintiff's evidence is irrelevant.  Defendants submitted a statement of facts with evidence

7 that Plaintiff was transferred at 8:30 p.m. on April 14, 2006, and the temperature between 7

8 p.m. and 9 p.m. on that date was between 47 and 48 degrees.  (Doc. 64 ¶¶ 22-23). The

9 Weather Underground report states the daily high was 63 and the low was 37.  Plaintiff

10 makes no effort to establish what time he was transferred or what the temperature was when

11 he was transferred.  The Weather Underground report does not refute Defendants' evidence.

12 Plaintiff's motion will be denied for lack of foundation and relevance.

13           Accordingly,

14           **IT IS ORDERED** Defendant's motion **(Doc. 63)** is **GRANTED**.

15           **IT IS ORDERED** Plaintiff's motion **(Doc. 71)** is **DENIED**.

16           **IT IS ORDERED** Plaintiff's motion **(Doc. 73)** is **DENIED**.

17           DATED this 27th day of September, 2011.

Roslyn O. Silver
Chief United States District Judge

- 16 -